The United States v. Munksgard. Mr. Bernstein. Thank you, Your Honor. Stephen Bernstein here on behalf of Matthew Munksgard, the appellant. The first issue deals with the jurisdictional prerequisite that the government prove that the insured bank had a status. That status was not proven by the evidence in this case is the crux of the argument. The standard begins with Cook v. United States, the Fifth Circuit, 1963 decision. I'm sorry. Yes. And in that case, they establish that the fact that a bank was insured by the FDIC was a necessary element of proof and a prerequisite to any conviction. So can I ask you just a quick question so we're all on the same page? Yes, sir. The evidence here is that there is an insurance certificate circa 1990, right? That's correct. Plus testimony that the bank is currently insured? Yes, sir. Testimony by a vice president of the bank who had been employed with the bank from the outset but then had a five-year hiatus where he was not employed with the bank, and that five-year hiatus covered the point of time that this particular incident occurred. So we've got evidence that there was insurance in 1990, predates the crime. Evidence that the bank is currently insured postdates the crime. And then didn't he also say, and yet this thing didn't need to be updated all the time? Well, it is, but he was first not a person who kept the records that could certify that or testify that to court. Now I think the courts that have reviewed this, and Mr. Clausen was the person that we referred to, and the other case that I think is of great import is Plattenberg. And following Plattenberg, even in the Fifth Circuit, Williams, which was not- Plattenberg just had the certificate that was there. That's right. And there was a seven-year space of time, and the court there said that's not good enough. Well, I think the inference in Plattenberg's decision is you have to infer from the date of the certificate, which he was paid for, the insurance was paid, up to the time of the crime. Right. Well, I think that's a very good point because- But the court did not draw that inference. Right. And the court also pointed out that this is a very easy thing for the government to prove because not only do you have to have a certificate, but you've got to certify that you have paid the premium every year so that it's in effect, and all that takes is a copy of the check or a certification from an officer who has got that job to keep those records and say, we pay it every year. But isn't the difference between Plattenberg in this case and Plattenberg, I think what Judge Toflat is saying is that in Plattenberg, you only had the evidence of predated insurance. You didn't have anything as to what happened post-crime. No, I think that was correct. You've got it bracketed, right? Didn't Plattenberg say, we've got evidence of the original certificate seven years before the crime, and didn't the Plattenberg court say, and nothing more? That's correct. Here you've got the something more in the sense that you've got it bracketed pre-crime, post-crime. But you have a comment by an officer who is not a person who is responsible for maintaining that information. It's just somebody at the bank, and that's where I think the correction is. You have to draw the inference. I speak for myself. Yes, sir. That it was paid for up through the... Exactly, and this was not an officer who could say that. It was enforced, same thing. Right. Of course, we have cases out there, counsel, where the only evidence of FDIC insured status of a branch office was the testimony of bank officers without any certificate. Yes, sir, but they've got to be the right bank officers who can certify and testify knowledgeably that I know this because we keep these records and I keep them, or I have maintained and paid for the premium each year. Well, let's explore that with respect to this particular bank officer. We know, one, he was there for an extended period of time. Two, we know he was a senior officer in the bank for an extended period of time. And three, he actually testifies about the nature of the certificate by saying, does he not, that the certificates don't have to be issued every year? I mean, he actually explains something about the process of issuance by the FDIC of their certificate, doesn't he? Suggesting more than a passing knowledge of the process. Does that overstate it? If it does, okay. That is overstated because this officer was not a person who maintained the records of the bank and how it operated. No, no, I accept that he wasn't a custodian, which is what you're focusing on, but I'm asking a slightly different question. Does a bank officer have to be, literally speaking, a custodian of the records to be able to testify knowledgeably about the FDIC status? No, sir. But we're objected to, as in this case, I think there has to be something to show that he has a reason to know this information, especially when he was absent from the bank at the time of the offense. He was on a five-year hiatus when this all occurred. But could he not still, I mean, I guess we've got two different things going on. One is his personal knowledge that a certificate was on file at the time. If he wasn't there for the period of the crime, I understand your argument. But if instead what we're arguing about is really sort of general knowledge as a high-ranking bank officer as to how these things are done in the ordinary course of business, then his absence during the period of the crime wouldn't be dispositive, right? Except for, again, the objection that was made at court because there's nothing to say, well, he knew this, he researched this, he looked at the records about this. It could be no more than an assumption, maybe a pretty good assumption, but that's not proof. And just remind me, I'm sorry that I don't recall this specifically, but remind me about sort of like what kind of cross-examination was he subjected to about his knowledge? Well, the objection was that it was hearsay, and that there was no evidence that he had direct knowledge of what he was testifying about. And so once the hearsay objection is overruled, then what? Was he tested? You objected on grounds of relevancy. Yes, sir. It was both. Because you didn't show the time. That's right. And I will say, because even at the judgment of acquittal, and I have great respect for Judge Walker, but Judge Walker made a statement that I think came out of a case, not out of a testimony, when he said the officer said it was valid when we first did it in 1990, it was valid yesterday, and it'll be valid tomorrow. That was not testimony by this officer. That is a quote from a case. And again, my objection at trial was, this is not a person who has demonstrated that he knows this information. We've got a case out there, U.S. v. Dennis, where the court rejected a challenge to sufficiency, and the only proof, as best I can tell in that case, was that the bank was federally insured, was testimony from an FBI agent. That he assumed it was insured and there was bank stationary introduced in evidence that had the phrase member FDIC on it. And we said that was enough. Are you familiar with the case I'm talking about now? I'm not familiar with that case. Strikes me as a very thin proof on it. Right. But even there, the 11th Circuit held that was sufficient. What you've got here is the testimony of a 19-year vice president who claimed to be familiar. You've got his testimony that it was presently insured. You've got his testimony that there is a certificate out there, admittedly it's old, and that the certificates are not issued every year. Yes, sir. That would be a fair summary of what we got? Yes, sir. Why would that not be enough if we're allowing an FBI agent to testify? He's surely not a custodian. I agree with that, Your Honor. And all you had was the stationary which said member FDIC on it. Yes, sir. This just seems anomalous. I'm going to agree with you on that case holding. I would like to move briefly, because I'm just about to run out of time, to the other issue, which is the issue that I'm more concerned about in terms of the interpretation of U.S. v. Miller, the 6th Circuit case for identity theft. I want to point out very quickly that the case that was cited by the government supplemented the United States v. Michael. The difference between the holding in Miller, which they talked about impersonating somebody else, and in Miller the difference according to the Michael court, and it's found at page 628 of that opinion, is Miller also elaborated on these issues in a way that undermines Michael's position. Miller lies about what other individuals did, the court reasoned, were insufficient where he acted on behalf of an entity rather than on behalf of individuals. In this case, Monksguard was talking about Kyle Morris, a friend of his, who worked for this big egg company, and he then said the egg company would be the ones on the contract. That was the entity. That, I think, is the difference between Miller and Michael, and in this case Monksguard was talking about an entity, the big company that supposedly was the one that signed the contract that wasn't valid. I know I'm running out of time, so I wanted to just get that point out before I come back on rebuttal. Thank you. Mr. Grogan. Good morning, Your Honor. May it please the Court? I will tell you where I am. Yes, Your Honor. Plattenberg says the certificate is not enough, and that's binding. That's Fifth Circuit precedent. Well, within a day. And there's a footnote in Bonner which says we haven't decided what to do with that one day, between September 30 and October 1, but at any rate. And the opinion says it's an old Fifth Circuit case, but put that aside. It does hold the certificate's not enough. So now we have the officer who says it's insured today. Now it seems to me that you have to draw a factual inference from the time that it was initially taken out, paid for, issued, whatever, that it was kept current all those years. A factual inference. And this is a criminal case, so that disturbs me. I think it's fair to say, Your Honor, that I understand your point. I think it depends on what kind of inference you can draw from the particular fact. This isn't a situation like a search warrant where there's something that could be stale. This is the sort of thing. This objection was well debated in the district court. This is not one of those isolated cases where nobody says much. It was wrung out. And you had a certificate, and it's enforced now. So you have to draw an inference, either that or what? I think that's right. You can't take judicial notice, can you? No, Your Honor. It's a disputed fact. That's correct, Your Honor. The analogy that I think makes some sense to me, Your Honor, is, and it's somewhat morbid, but suppose I went to and saw an old high school buddy 20 years after the fact and said, My child just had an 18th birthday, or was born 18 years ago. The natural inference that someone would draw from that kind of statement is that your child's about to go to college or graduating from high school or something like that. Because absent evidence that there's some kind of intervening event, it's reasonable to infer that it would continue into the future. Now, at some point that may be a tenuous inference, but here it's taken in conjunction with other evidence. And does the testimony of the same fellow that the certificate didn't have to be renewed every so often, does that help to fill in the space between issuance and current? I certainly think so, Your Honor. The First Circuit's decision, which I think we cited in our brief, IOWA, I don't know how to pronounce it, I think went into more detail about the nature of FDIC and why that's a reasonable inference. This is in layman's terms to the jury, and it makes it reasonable to infer that in the absence of some intervening event that what was will continue to be. If I could ask you just a practical question, why is it that we keep having cases about this? I mean, is this that hard? I mean, what I think about, and you can tell me why the analogy is no good, but I mean, you know, like we all drive around with proof of insurance in our glove compartments, so when we get pulled over and the officer says, license, registration, and proof of insurance, you just pull it out and you say, see, Nationwide insures this car. Is it that hard? Why do we keep having this problem? I don't have a good answer to that, Your Honor, other than to say I plan to make sure in my cases that we have it nailed down. All the prosecutor has to do is go to the FDIC and say, we're about to try this case. It involves a federally insured bank. Produce a certified copy of the certificate from the FDIC, the controller of the concurrency of Federal Savings and Loan Association. It's as simple as that. I agree, Your Honor. I think that is the best proof, and I don't take any issue that it's not difficult to produce. And yet, you can see from this panel's discussion, I think there were eight or ten published opinions going back to the old Fifth Circuit and running through our case law where this is okay and that isn't, and he knew this much but he didn't know that, and the certificate is old but not too old, and we fill in the gaps and so on. It seems to me this is an issue that we ought not to be fooling with. In 1978, the Fifth Circuit wrote a scalding decision about this problem. When I was on the district court, there were two or three times the government forgot, two or three times I forgot to put any evidence at all and rested and then moved to reopen. I granted the reopening. On one occasion, we had to have a continuance so they could get some evidence. That's inexcusable. This is just lack of preparation. I understand, Your Honor. I don't dispute that. Help me with the facts here. The bank officer who testifies, what does he tell us about his position in the bank, his function, et cetera, his relationship to the insured status of the bank? What does he tell us, if anything? He's the bank vice president, Your Honor. He's the senior vice president. He's been there for quite a long time. I don't have in my notes that his hiatus covered the period and time of the offenses. I may have overlooked that. I believe he also served for a time on the loan committee that approved these types of loans. This is a small community bank. It's not a large organization. I think less than a billion dollars in assets was the testimony. From him? That may have come from Mr. Lott, the loan officer, Your Honor. What does he say specifically about the fact that the FDIC doesn't issue these certificates every year or periodically? I think the question was does it have to be renewed every so often, and the answer was it does not. Do you know whether the certificate is renewed every so often, whatever that means? It's not, so it's not renewed every so often. The implication there is it's renewed at some time. Then that's Mr. Lindsey, and he kept on going, but he didn't clear it up. Your bank is currently FDIC insured, correct? Yes. I think that's one inference to draw from the evidence, Your Honor. Well, one inference is it's from time to time renewed. The charges involving Muscard covered conduct in 2013 and 2014. He testifies in 2016, right? That's right, Your Honor. Does he testify in words or substance that he was in fact at the bank in 2013 and 14? My recollection of the testimony, Your Honor, is that he started in, I think, 1993. Right, and there was a five-year gap, but it wasn't clear what the five-year gap was. But does he testify affirmatively he was at the bank in 13 and 14? I don't believe he put a temporal limitation on when his hiatus was or when he was there or wasn't there. What he says is in 16 it is currently insured. That's correct, Your Honor. And there's a certificate that said it was insured 23 years earlier. That's right, Your Honor. I think the case that's most on point with this one on that issue is the Allstat case from the former Fifth Circuit, 325 F. 2nd. 257. That case doesn't have a temporal or doesn't say when the certificate was or was not issued, but it has testimony four years after the fact, or the indictment is four years after the robbery, and so presumably a testimony came after that that the bank was currently insured, and the court found that that was sufficient. Here's a really ignorant question. For this kind of bank, is FDI insurance optional or mandatory? Is it like flood insurance if you're in a floodplain? Or is it you can take it or leave it? I don't have any information that it's mandatory, Your Honor, but I think it's the inference that's discussed in Cook is that sort of a universal inference that almost every bank. You mean I can open up a savings and loan or a community bank without any insurance either coming from the FDIC, the controller of the currency, or the Federal Savings and Loan Association? Just open up a bank, mark as his community bank, come right in. I don't think so, Your Honor. I don't think so either. But, I mean, and if that's true, that's a fact you should embrace, right? I mean, certainly, Your Honor. But there's no record evidence on that point, is there? No record evidence, Your Honor, that I'm aware of from that. Counsel, my concern is we've got to write an opinion, and we have to talk about inferring facts from a certificate and from its operation today, effective today, and from time to time is not renewed, implying that it may be renewed. We're in a criminal case. We'd have a hard enough time in a civil case, but what do we say about the inference that was in effect at the time? How do we write it out? I think Cook answers— Wait, the Supreme Court won't jump on it. I understand, Your Honor. I think Cook answers that question, that it's a permissible inference from evidence that if something was in existence at a particular time, then it's reasonable to infer that it will continue into the future. And when there's additional evidence that that thing will continue to be absent some intervening event, which I think Plattenberg discusses, then that's an inference in one direction, and then the present sense testimony of the— In other words, it's reasonable to draw from the fact that the certificate issued that it was kept current. Yes, Your Honor. I suppose the additional fact that you have is he says it is indeed current, at least as of 2016. The officer does say in 2016 this bank was insured. That's correct, Your Honor, and that came after the objections. That testimony was not— So it existed earlier and it existed later, and he's testifying two years after the events in question. That's the basis for the inference. That's right, Your Honor. I think it may be— And that it was a small bank, there weren't a lot of officers, and he was a senior vice president and had been there a long time. That's right. One correction, I think the dates, it was September of 2016. I think the earliest defense was March of 2013. Right, 13 and 14 were the events, right? That's right, Your Honor. If I could turn to the next issue, the aggravated identity statute. We think the Sixth Circuit's Michael decision has basically the correct analytical framework that use is under the plain and ordinary meaning of the term the defendant used the means of identification by using a forged signature and that much of the work to be done in these types of cases is on the during and in relation to prong. The defendant relies primarily on the Miller decision that came out of the Sixth Circuit and the Baroa decision that adopted what the Miller defendant had proposed as his definition, which was passing yourself off as someone or purporting to act on someone's behalf. The Sixth Circuit didn't adopt that specifically in Miller, but the First Circuit did in Baroa. But the Miller decision, we think, has some incorrect reasoning on how it gets to the question of whether use is ambiguous. The canons that it's applying don't really apply. The associated words canon generally applies when you have a list of certain things that have some common quality and the same thing with the catch-all canon, and here there's no common quality that would suggest a narrowed limitation of the term use. I think the Sixth Circuit's Miller decision also overlooks the background judicial construction of the term use from Bailey. In Bailey, that's where the Supreme Court said that use does not mean mere possession. So this statute, coming after Bailey and the Bailey fix, I think reflects a congressional intent to broaden the reach of the statute rather than to narrow it. The legislative history, to the extent it's relevant because we think the term use is unambiguous, supports that conclusion when the report is talking about the background need for the legislation and the examples that the Congress gave of certain types of identity theft are examples of light sentences rather than a description of all types of offenses that are covered within the statute or limitation on the terms of the statute. I think the Supreme Court's decision in Smith, considering 924C, is useful. It's one thing to say that the ordinary meaning of use as a firearm includes using a firearm as a weapon. Since that is the intended purpose. But it's quite another to conclude that as a result the phrase also excludes any other uses. So we think the Sixth Circuit's reasoning is spot on point. Are there no other questions? Thank you. I think we understand your position. Mr. Bernstein. Thank you, Your Honor. I do not believe that Miller is overruled by Michael. It's the same Circuit Court of Appeal. They know what they did in Miller and they explained it to Michael and that's what I was pointing out at the end of my comments before. And I think that's very important. Michael does not say the Miller court got it wrong. And they went down to basics. Verbs and objects and sentences and phraseology. But they very clearly said that when you are acting on behalf of individuals, that was key to the Miller court. And that was key to the Michael court. In Miller, the person was saying two people on my board gave me authority and I've represented to the bank that the board gave me authorization to make this loan. The entity was the one in question, not the two people. And in Miller, they found in favor of the appellant. In Michael, Michael was saying I'm going to use this doctor. He was a pharmacist. I'm going to use this doctor's identity and I'm going to use that patient's identity and I'm going to go apply for benefits from the insurance company. And for that reason, they said this is different because Michael was misrepresenting the two individuals, the doctor and the patient. That made a difference to Michael in where they said you had an entity. In this case, Cal Main Foods was the entity that was on the contract. Kyle Morris happened to be an old friend of Mr. Monksguard and he used his name as opposed to the other counts where he just made up names. And the very difference is it's not an automatic aggravator for every time you commit offense against the bank or in a loan. It's not automatic that you have aggravated identity theft. There is a distinction. The government's argument would embrace that every time you committed a crime and you happened to use somebody's name without permission, that would be aggravated identity theft. Miller says no, clearly says no. Michael does not reverse Miller. Michael clarifies Miller. And in there it says if you're representing an entity as opposed to an individual, because that's the key to identity theft. You're stealing or misusing or appropriating or misrepresenting the individual's identity. So the entity application is what Michael stands for.  That's the critical difference that puts it into the Miller category, not the Michael category. Both are good law. Both are interpreting the same statute. Both are giving you guidance on how to decide is this a use or not a use under the statutory interpretation and whether we apply this particular criminal sanction. Because if you go with the government's argument and both Miller and Michael said, you know, we've got two reasonable constructions here. We've got to choose which one we're going to apply. And we choose not to apply the one that the government argues which would be an absolute criminal liability for every offense you could prove if you happened to use somebody's name. That's not what they decided. And that's what they clarify, I think, for this court in Monksguard. So that's what I think is a very important difference in the application and the development of case law from Miller to Michael, which was just decided this year. On the other issue, I'll just acknowledge the court's citation by Justice Marcus about the one case which I'm not familiar with. I think it would be inconsistent for the FBI agent to testify as to those records. I think one distinction is when a bank says we don't have to renew our certificate every year, that's to operate as a bank. We're talking about what's admissible in a court of law and a criminal prosecution where the government has the absolute burden of proof. They've got to prove the elements. What do we do with the inference the court drew in Cook? That is to say, there was testimony the bank was presently insured, and so on the grounds of the evidence of a present condition, one could reasonably infer the existence of the past condition as well. I would cite that the distinction between Cook in this case, in Cook that lawyer stood silent, did not ask a single question, did not object, did not move for a judgment of acquittal. That's very different from Mr. Munksgaard's situation where I objected, I moved for a judgment of acquittal, I tried to go further, and the court said no. I accept that. I take your point, but I guess my question is going to the fact that in this case, the present condition is a statement in 2016 from the senior vice president. This bank is insured by the FDIC, from which Mr. Grogan would have a court reasonably infer that two years earlier it was insured as well. And that seems to me to be what Cook says, albeit Cook's a plain error case and it doesn't come up in quite the same way. I don't know why your fellow justices in other courts later on would say, I don't know why the government doesn't get this. It's so easy to do. As you said, get a statement from FDIC, show your proof of payment or premium any particular year, get the records that you have in your bank, just put it into evidence. It's easy to prove. Why would they talk about that if they didn't need something more than just that inference that you're talking about? I think that that's why they say it. Government, give it to us, we need it, or one day you're going to find yourself on the wrong side of the decision. Thank you very much. Mr. Bernstein, you were appointed by the court and we appreciate your having taken the assignment. Thank you very much, Your Honor.